**M. & J. TRACY, Inc., as owner of THE Barge CAPE EDISON, Libellant,**

v.

**THE Tug NEWARK, her engines, boilers, etc. and The Pennsylvania Railroad Company, Respondent.**

United States District Court
S. D. New York.
March 6, 1957.

Macklin, Speer, Hanan & McKernan, New York City, for libellant.

Burlingham, Hupper & Kennedy, New York City, Robert F. Lynch, New York City, of counsel, for respondent.

BONDY, District Judge.

This libel has been brought by the M. & J. Tracy Co., as owner of the Barge Cape Edison, to recover damages alleged to have been sustained through the negligence of the respondents, the Pennsylvania Railroad Company and its tug Rahway. The tug Rahway has been named as a respondent in place of the tug Newark at the beginning of the trial by an order of the Court.

At about 4:35 P.M., on March 17, 1952 the tug Rahway, after landing Pennsylvania Railroad Barge No. 494, which she had in tow, on the north side of Pier L, Jersey City at door number 32 left the slip between Piers L and M. At that time there were moored in the slip, on the south side of Pier M, two steel barges, the Cape Edison carrying 1700 tons of coal and the Cape Caley carrying 2100 tons of coal. The two barges, both owned by libellant, were moored starboard side to the pier, the bow of the Cape Edison about four feet from the stern of the Cape Caley, the Cape Edison stern about 200 feet from the river end of Pier M, which is 1752 feet long. The slip is 342 feet wide. At the time the wind was from the northwest at 28 miles per hour with gusts up to 30 miles per hour. The water was choppy and the tide ebb.

The libellant contends that the tug Rahway landed her tow close to the land end of Pier L, and that after turning in the slip and on her way out of the slip she passed close to the libellant's barges, at an excessive rate of speed, creating swells which caused the libellant's barges to come into contact and resulted in a crack about 12 or 13 inches long in the starboard bow of the Cape Edison. The Cape Caley was not damaged.

The libellant relies on the testimony of the captains of its two barges. Although on direct examination they both seemed to indicate that they saw the tug Rahway proceed out of the slip bow first at great speed on cross-examination it developed that neither actually saw the tug pass their barges. Lopes, the Captain of the Cape Edison testified that he saw the tug Rahway turn at the land end of the slip, and that the next time he saw the Rahway she was well out in the river. The Captain of the Cape Caley did not see the tug Rahway in the slip at all, but observed her only after she was out in the river. Lopes' contention that the tug created the swells that caused the barges to collide is based almost entirely on what the Cape Caley Captain told him though he admitted he did not see anything until after the Rahway was out in the river.

The respondent contends that the Rahway backed out of the slip but not at an excessive rate of speed, then turned to port and proceeded down river to Pier H. The respondent insists that door number 32 is only 200 feet from the river end of Pier L, which is about 1500 feet long and that the tug Rahway did not proceed further into the slip.

The testimony of the Captain of Barge No. 494 and the Captain of the tug after refreshing their recollection from entries in their logs that Barge No. 494 was landed at door number 32 only 200 feet from the river end of Pier L and the testimony of the Captain of the tug that he backed out into the river satisfies the Court that the Rahway after landing her tow 200 feet from the river end of the pier backed out of the slip.

The fact that the Captain of the Rahway was not positive that he backed out of the slip does not destroy his credibility, Wigmore on Evidence, 3rd Ed., § 726. On cross-examination he was asked: "How do you recall then? Upon what do you base your recollection that you backed out of the slip? Is it what you would do generally?" The Captain replied, "It is what I would do 999 times out of a thousand". In reply to the question, "You are not telling me today that it is what you actually did; it is what you think you must have done?" The Captain stated, "No it is what I must have done". The Captain was also asked, "You aren't sure, are you, that you did back out of this slip? No, sir, I am not positive".

Having landed the Barge No. 494 200 feet from the river end of the Pier, it would not be reasonable to believe he would travel to the land end of the slip, then turn and retrace his course from the land end to the river end of Pier M and again turn upon his course downriver which would have lengthened his course and taken more time. Under the circumstances, I believe that the tug Captain, a man of long experience, chose the quicker and better course by backing the tug out of the slip.

Furthermore, it appears that on account of the tug's construction she could not create sufficiently large swells to disturb two heavily laden steel barges, while she was backing out of the slip and therefore did not cause the damage.

Accordingly, judgment is granted dismissing the libel.